## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY
378 N. Main Ave.
Tucson, AZ 85702,

                   *Plaintiff*,

   v.

U.S. FISH AND WILDLIFE SERVICE
1849 C Street NW, Room 3358
Washington, DC 20240,

                   *Defendant*.

Civil Action No: 19-932

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

**(Freedom of Information Act, 5 U.S.C. § 552)**

## INTRODUCTION

1.     Plaintiff Center for Biological Diversity (Center)—an environmental conservation organization that works to protect native wildlife and their habitats—brings this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *as amended* or, alternatively, the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06. Through this action, the Center seeks the disclosure of agency records requested from the United States Fish and Wildlife Service (Service) relating to the Service's use of neonicotinoid pesticides and genetically modified organisms (GMO) for agricultural purposes in our country's national wildlife refuges. It has been over six months since the Center made its first of three FOIA requests in this action, and the Service has yet to identify or disclose any responsive records.

2.     On August 2, 2018, the Service finalized a decision reversing a prior agency action that prohibited the use of bee-killing neonicotinoid pesticides and pesticide-intensive GMO crops on national wildlife refuges.

3.     The Service finalized its August 2018 decision without public notice and

COMPLAINT                                                         1

comment and before the agency formally assessed the effects of its decision on endangered and threatened wildlife present on or around national wildlife refuges.

4.      As a result of the Service's August 2018 decision, national wildlife refuges can now utilize neonicotinoid pesticides and GMO crops on national wildlife refuges.

5.      The National Wildlife Refuge System (Refuge System) consists of millions of acres of public lands and waters managed by the Service for the conservation of plants, fish, wildlife, and their habitats. The Service must manage each refuge in the Refuge System in furtherance of the System's fundamental wildlife conservation objectives.

6.      Exposure to neonicotinoid pesticides can be toxic to bees and other pollinators and can otherwise harm endangered wildlife populations—including wildlife populations that a national wildlife refuge may have been explicitly established to protect. Neonicotinoid pesticide use is also linked to nationwide water and soil contamination, as well as other environmental and economic harms.

7.      The use of GMO crops is well-documented as increasing the application of pesticides, including highly and moderately toxic pesticides that can harm pollinators and other insect populations, birds, aquatic animals, and wildlife.

8.      After the Service finalized its August 2018 decision, the Center submitted three FOIA requests for records to understand how and where the Service will use neonicotinoid pesticides and GMO crops on wildlife refuges.

9.      As of the filling of this complaint, the Service has failed to produce any records responsive to any of the three FOIA requests at issue in this lawsuit.

10.     Prompt access to these records is necessary to effectuate FOIA's purpose of transparency. Thus, the Center seeks from the Court declaratory relief establishing that the

Service violated FOIA or, alternatively, the APA. The Center also seeks injunctive relief directing the Service to conduct lawful searches and provide all responsive records without further delay.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) (FOIA) and 28 U.S.C. § 1331 (federal question jurisdiction).

12.     Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

13.     Declaratory relief is appropriate pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

14.     Injunctive relief is appropriate under 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

15.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to secure a future for all species, great and small, hovering on the brink of extinction. Informing the public is central to the Center's mission. The Center educates and counsels its members and the public on environmental issues, policies, and laws through media advocacy, its website, and publications that are widely distributed.

16.     The Center and its more than 69,500 members are harmed by the Service's failure to provide the requested records in violation of FOIA, or, alternatively, the APA. For the Center to be successful in its mission to protect native species and their habitat, it is critical that it is able to maintain access and transparency to information related the Service's administration of the

COMPLAINT                                                                 3

shared natural resources that it is obligated to protect, such as America's treasured national

wildlife refuges, and its management of environmental harms, especially contaminants that may

affect protected species and ecosystems.

17.     Defendant U.S. FISH AND WILDLIFE SERVICE is an agency of the U.S.

government within the Department of the Interior. The Service is responsible for conserving,

protecting, and enhancing fish, wildlife, and their habitats for the continuing benefit of the

American people. The Service is in possession and control of the records that the Center seeks,

and as such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f). The Service is the federal agency

responsible for implementing the federal laws and regulations at issue in this complaint and

fulfilling the Center's FOIA requests.

## STATUTORY AND REGULATORY FRAMEWORK

18.     The basic purpose of FOIA is to sustain an informed citizenry through

government transparency, which is vital to the functioning of a democratic society, and to

provide a needed check against corruption by holding the governors accountable to the governed.

19.     FOIA establishes the public's right of access to all federal agency records upon

request unless the agency can demonstrate that one of nine narrowly enumerated disclosure

exemptions applies. 5 U.S.C. §§ 552(a), (b)(1)-(9).

20.     FOIA places the burden on the federal agency to prove that it may withhold

responsive records from a requester. *Id*. § 552(a)(4)(B).

21.     The scope of federal agency records considered to be public and subject to release

under FOIA is broad. *Id*. § 552 (a)(2).

22.     FOIA imposes strict and rigorous deadlines on agencies to respond to requests.

*Id*. § 552 (a)(6)(A). FOIA obligates an agency responding to a FOIA request to issue a

determination on the request within twenty working days of receipt (the "determination deadline"), and if the agency decides to produce records in compliance with the request, to make the requested records promptly available. *Id*. §§ 552(a)(6)(A)(i), (a)(3)(A). Within twenty working days, the agency must also inform the requester that it has a right to appeal the agency's determination. *Id*. § 552(a)(6)(A)(i).

23.     FOIA provides a specified set of limited circumstances under which federal agencies may obtain more time to make the determination that is required by FOIA. *See id*. §§ 552(a)(6)(A), (B). The federal agency must explicitly invoke these circumstances for this provision to apply.

24.     FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *Id*. § 552(a)(3)(C)-(D). Using the date of a FOIA request as the cut-off date for the search is not always reasonable, while using the date that the agency commences its search has consistently been found to be reasonable.

25.     FOIA requires federal agencies to promptly disclose requested records. *Id*. §§ 552(a)(3)(A), (a)(6)(C)(i). Any inquiry under FOIA brings with it a strong presumption in favor of disclosure.

26.     In certain limited instances an agency may withhold records from FOIA's broad disclosure mandate. *Id*. § 552(b)(1)-(9). In light of FOIA's dominant objective of disclosure over secrecy, these exemptions must be narrowly construed and must be communicated to the requester.

27.     A requester "shall be deemed to have exhausted his [or her] administrative remedies with respect to such request if the agency fails to comply with the applicable time limit

provisions." *Id.* §552(a)(6)(C)(i). In that event, FOIA authorizes the requester to sue the agency in federal court. *Id.* § 552(a)(4)(B).

28.     The U.S. district courts have jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

29.     Alternatively, an agency's response to a FOIA request and/or a FOIA appeal is subject to judicial review under the APA, which confers a right of judicial review on any person who is adversely affected by agency action, 5 U.S.C. § 702, and authorizes district courts to compel agency action that is unlawfully withheld or unreasonably delayed. *Id.* § 706(1). District courts must set aside any agency action that is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* § 706(2)(A).

## **FACTUAL BACKGROUND**

A.    The Service's August 2018 Decision Allowing for the Use of Neonicotinoid Pesticides and GMO Crops in National Wildlife Refuges

30.      The Refuge System is the largest collection of lands set aside nationally for the preservation of fish and wildlife. In furtherance of the Refuge System's wildlife conservation objectives, "[t]he mission of the Refuge System is to administer a national network of lands and waters for the conservation, management, and where appropriate, restoration of the fish, wildlife, and plant resources and their habitats within the United States for the benefit of present and future generations of Americans." 16 U.S.C. § 668dd(a)(2). To support this mission, the Service is obligated to ensure that the biological integrity, species diversity, and environmental health of the Refuge System are prioritized and preserved. *Id.* § 668dd(a)(4)(B).

31.     Accordingly, national wildlife refuges are vital to the survival of thousands of imperiled species and are a critical component of the natural heritage of all Americans.

32.     On July 17, 2014, in furtherance of this mission and for the benefit of current and future generations, the Service finalized a decision phasing-out the use of neonicotinoid pesticides and GMO crops for agricultural purposes in the Refuge System (2014 Refuge System Decision).  The Service's action was deliberate, well-supported by sound science, and based on the unambiguous determination that such practices were not compatible with the mission of the Refuge System.

33.     Pursuant to the 2014 Refuge System Decision, individual refuges were to discontinue uses of neonicotinoid pesticides and GMO crops by January 2016. Upon information and belief, by 2018 refuges across the country were able to come into compliance with this requirement.

34.     Nevertheless, on August 2, 2018 the Service abruptly and fully withdrew the agency's 2014 Refuge System Decision in a two-page memorandum entitled "Withdrawal of Memorandum Titled, 'Use of Agricultural Practices in Wildlife Management in the National Wildlife Refuge System' (July 17, 2014)" (2018 Refuge System Decision).

35.     The result of the Service's 2018 Refuge System Decision is that national wildlife refuges can now utilize neonicotinoid pesticides and GMO crops on refuge lands, posing grave risks to threatened and endangered species.

B.     The Center's FOIA Requests

36.     After the Service finalized the 2018 Refuge System Decision, the Center submitted three FOIA requests for records on how and where the Service is implementing its decision to allow the use of neonicotinoid pesticides and GMO crops on wildlife refuges.

a.     *FWS-2018-01237 (Implementation of 2018 Refuge System Decision)*

37.     On September 17, 2018, the Center submitted a FOIA request to the Service

COMPLAINT                                                                                                   7

seeking the following records: (1) records that relay instructions internally, to regional levels, and/or to refuge personnel mentioning or including the implementation of the 2018 Refuge System Decision; (2) pesticide use proposals for the use of neonicotinoid pesticides for agricultural purposes on national wildlife refuges; (3) pesticide use proposals containing language about the use of GMO or genetically engineered (GE) crops on national wildlife refuges; (4) cooperative farming agreements containing language about the use of neonicotinoid pesticides and/or GMO or GE crops on national wildlife refuges; (5) records mentioning or including requests for approvals of neonicotinoid pesticides and/or GMO or GE crops for agricultural purposes on national wildlife refuges, including but not limited to all concurrences, denials, and/or other records generated in responding to such requests; and records, including communications, mentioning or including consultations under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531-1544, between the Service, field offices, regional offices, or refuge reviewers on pesticide use proposals containing language about the use of any neonicotinoid pesticide and/or GMO or GE crop for agricultural use on national wildlife refuges. The date range for this request is from August 1, 2018 to the date the Service conducts the search.

38.     The Center's September 17, 2018 FOIA request noted that "neonicotinoid pesticides" include, but are not limited to, neonicotinoid sprays, powders, and seed coatings or treatments, and specifically include, but are not limited to, the pesticides clothianidin, thiamethoxam, imidacloprid, acetamiprid, nitenpyram, nithiazine, and thiacloprid.

39.     The Center's September 17, 2018 FOIA request further noted that "consultation" includes, but is not limited to, formal and informal consultation, pre- and early consultation, and reinitiation of consultations.

40.     On September 25, 2018, the Service acknowledged the Center's request and

assigned it tracking number FWS-2018-01237.

41.     On November 13, 2018, after receiving no further communications from the Service, the Center sent a letter notifying the Service that it had violated FOIA by failing to make a final determination on the Center's FOIA request within FOIA's statutory deadline and offering assistance in responding to the request.

42.     As of the date of this complaint, which is approximately 108 workdays after the 20-workday determination deadline of October 24, 2018, the Center has received no records or additional communications from the Service regarding this FOIA request.

43.     In connection with this FOIA request, the Service has not requested additional information from the Center or notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for determination. *See* 5 U.S.C. § 552(a)(6)(A)-(B).

44.     The Service's failure to conduct an adequate search for responsive records and provide all responsive records to the Center undermines FOIA's primary purpose of transparency.

45.     The Center has been required to expend resources to litigate this action.

b.      *FWS-2019-00121 (Implementation of 2018 Refuge System Decision, Region 4)*

46.     On November 5, 2018, the Center submitted a FOIA request to Region 4 of the Service seeking: (1) from August 2, 2018 to the date the Service conducts this search, all records that include intra-agency and refuge personnel instructions generated in connection with implementing the 2018 Refuge System Decision; (2) from August 1, 2018 to the date the Service conducts this search, all pesticide use proposals for the use of neonicotinoid pesticides for agricultural purposes on the Region's national wildlife refuges; (3) from August 1, 2018 to the date the Service conducts this search, all pesticide use proposals containing language about the

use of GMO or GE crops on the Region's national wildlife refuges; (4) from August 1, 2018 to the date the Service conducts this search, all cooperative farming agreements containing language about the use of neonicotinoid pesticides and/or GMO or GE crops on national wildlife refuges; (5) from August 1, 2018 to the date the Service conducts this search, all records mentioning or including requests for approvals of neonicotinoid pesticides and/or GMO or GE crops for agricultural purposes on national wildlife refuges, including but not limited to all concurrences, denials, and/or other records generated in response to such requests; and (6) from August 1, 2018 to the date the Service conducts this search, all records, including communications, mentioning or including consultations under the ESA between the Service, field offices, regional offices, or refuge reviewers on pesticide use proposals containing language about the use of any neonicotinoid pesticide and/or GMO or GE crop for agricultural use on national wildlife refuges.

47.     The Center's November 5, 2018 FOIA request to Region 4 noted that "neonicotinoid pesticides" include, but are not limited to, neonicotinoid sprays, powders, and seed coatings or treatments, and specifically include, but are not limited to, the pesticides clothianidin, thiamethoxam, imidacloprid, acetamiprid, nitenpyram, nithiazine, and thiacloprid.

48.     The Center's November 5, 2018 FOIA request to Region 4 further noted that "consultation" includes, but is not limited to, formal and informal consultation, pre- and early consultation, and reinitiation of consultations.

49.     On November 8, 2018, the Service acknowledged the Center's request and assigned it tracking number FWS-2019-00121.

50.     On February 25, 2019, after receiving no further communications from the Service, the Center sent a letter notifying the Service that it had violated FOIA by failing to make

a final determination on the Center's FOIA request within FOIA's statutory deadline and offering assistance in responding to the request.

51.     As of the date of this complaint, which is approximately 77 workdays after the 20-workday determination deadline of December 10, 2018, the Center has received no records or additional communications from the Service regarding this FOIA request.

52.     In connection with this FOIA request, the Service has not requested additional information from the Center or notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for determination. *See* 5 U.S.C. § 552(a)(6)(A)-(B).

53.     The Service's failure to conduct an adequate search for responsive records and provide all responsive records to the Center undermines FOIA's primary purpose of transparency.

54.     The Center has been required to expend resources to litigate this action.

c.     *FWS-2019-00119 (Implementation of 2018 Refuge System Decision, Region 5)*

55.     On November 5, 2018, the Center submitted a FOIA request to Region 5 of the Service seeking: (1) from August 2, 2018 to the date the Service conducts this search, all records that include intra-agency and refuge personnel instructions generated in connection with implementing the 2018 Refuge System Decision; (2) from August 1, 2018 to the date the Service conducts this search, all pesticide use proposals for the use of neonicotinoid pesticides for agricultural purposes on the Region's national wildlife refuges; (3) from August 1, 2018 to the date the Service conducts this search, all pesticide use proposals containing language about the use of GMO or GE crops on the Region's national wildlife refuges; (4) from August 1, 2018 to the date the Service conducts this search, all cooperative farming agreements containing language about the use of neonicotinoid pesticides and/or GMO or GE crops on national wildlife

refuges; (5) from August 1, 2018 to the date the Service conducts this search, all records

mentioning or including requests for approvals of neonicotinoid pesticides and/or GMO or GE

crops for agricultural purposes on national wildlife refuges, including but not limited to all

concurrences, denials, and/or other records generated in response to such requests; and (6) from

August 1, 2018 to the date the Service conducts this search, all records, including

communications, mentioning or including consultations under the ESA between the Service,

field offices, regional offices, or refuge reviewers on pesticide use proposals containing language

about the use of any neonicotinoid pesticide and/or GMO or GE crop for agricultural use on

national wildlife refuges.

56.     The Center's November 5, 2018 FOIA request to Region 5 noted that

"neonicotinoid pesticides" include, but are not limited to, neonicotinoid sprays, powders, and

seed coatings or treatments, and specifically include, but are not limited to, the pesticides

clothianidin, thiamethoxam, imidacloprid, acetamiprid, nitenpyram, nithiazine, and thiacloprid.

57.     The Center's November 5, 2018 FOIA request to Region 5 further noted that

"consultation" includes, but is not limited to, formal and informal consultation, pre- and early

consultation, and reinitiation of consultations.

58.     On November 7, 2018, the Service acknowledged the Center's request and

assigned it tracking number FWS-2019-00119.

59.     On March 1, 2019, after receiving no further communications from the Service,

the Center sent a letter notifying the Service that it had violated FOIA by failing to make a final

determination on the Center's FOIA request within FOIA's statutory deadline and offering

assistance in responding to the request.

60.     As of the date of this complaint, which is approximately 78 workdays after the

20-workday determination deadline of December 7, 2018, the Center has received no records or additional communications from the Service regarding this FOIA request.

61.     In connection with this FOIA request, the Service has not requested additional information from the Center or notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for determination. *See* 5 U.S.C. § 552(a)(6)(A)-(B).

62.     The Service's failure to conduct an adequate search for responsive records and provide all responsive records to the Center undermines FOIA's primary purpose of transparency.

63.     The Center has been required to expend resources to litigate this action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### VIOLATION OF THE FREEDOM OF INFORMATION ACT

### (The Service's Failure to Make a Lawful Determination)

64.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

65.      The Center has a statutory right to have its FOIA requests processed by the Service in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

66.     The Service has violated FOIA and the Center's rights in this regard by failing to provide lawful determinations under FOIA on the following requests: FWS-2018-01237; FWS-2019-00121; and FWS-2019-00119. *Id*. § 552 (a)(6)(A)(i).

67.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in public record requests to the Service in the foreseeable future.

68.      The Center's organizational activities will be adversely affected if the Service is

COMPLAINT                                                                                      13

allowed to continue violating FOIA's requirement to provide a lawful determination within FOIA's mandatory determination deadline for the Center's FOIA requests, as it has done in this case.

69.     The Center has exhausted its administrative remedies with respect to this claim. *Id*. § 552(a)(6)(C)(i).

70.     The Center is entitled to declaratory and injunctive relief from the agency's continued, improper withholdings of the requested records. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, upon information and belief the Service will continue to violate the Center's rights to receive public records under FOIA.

## SECOND CLAIM FOR RELIEF:
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### (The Service's Failure to Promptly Disclose Responsive Records)

71.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

72.     The Center has a statutory right to have its FOIA requests processed by the Service in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

73.     The Service has violated FOIA and the Center's rights in this regard by unlawfully failing to promptly disclose records that are responsive to the following FOIA requests by the Center: FWS-2018-01237; FWS-2019-00121; and FWS-2019-00119. *Id*. § 552(a)(3)(A).

74.     None of FOIA's statutory exemptions apply to the records that the Center seeks.

75.     The Center has a statutory right to the records it seeks.

76.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in public record requests to the Service in the foreseeable

future.

77.     The Center's organizational activities will be adversely affected if the Service is allowed to continue violating FOIA's requirement to promptly disclose records that are responsive to the Center's FOIA requests, as it has done in this case.

78.     The Center has exhausted its administrative remedies with respect to this claim. *Id*. § 552(a)(6)(C)(i).

79.     The Center is entitled to declaratory and injunctive relief from the agency's continued, improper withholdings of the requested records. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, upon information and belief the Service will continue to violate the Center's rights to receive public records under FOIA.

## THIRD CLAIM FOR RELIEF:
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### (The Service's Failure to Conduct an Adequate Search)

80.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

81.     The Center has a statutory right to have its FOIA requests processed by the Service in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

82.     The Service has violated FOIA and the Center's rights in this regard by unlawfully failing to undertake a search that is reasonably calculated to locate all records that are responsive to the following FOIA requests by the Center: FWS-2018-01237; FWS-2019-00121; and FWS-2019-00119. *Id*. § 552(a)(3)(C)-(D).

83.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in public record requests to the Service in the foreseeable future.

84.     The Center's organizational activities will be adversely affected if the Service is allowed to continue violating FOIA's requirement to undertake a search that is reasonably calculated to locate records that are responsive to the Center's FOIA requests, as it has done in this case.

85.     The Center has exhausted its administrative remedies with respect to this claim. *Id*. § 552(a)(6)(C)(i).

86.     The Center is entitled to declaratory and injunctive relief from the agency's continued, improper withholdings of the requested records. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, upon information and belief the Service will continue to violate the Center's rights to receive public records under FOIA.

### FOURTH CLAIM FOR RELIEF:
### VIOLATION OF THE FREEDOM OF INFORMATION ACT

**(The Service's Failure to Provide Reasonably Segregable Portions of Exempt Records)**

87.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

88.     The Center has a statutory right to have its FOIA requests processed by the Service in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

89.     The Center has a statutory right to all reasonably segregable portions of records containing information that may otherwise be subject to a FOIA exemption. *Id*. §§ 552(a)(8)(A)(ii), (b). The Service has violated FOIA and the Center's rights in this regard by unlawfully failing to provide reasonably segregable portions of records that are responsive to the following FOIA requests by the Center: FWS-2018-01237; FWS-2019-00121; and FWS-2019-00119.

90.     Based on the nature of the Center's organizational activities, it will undoubtedly

continue to employ FOIA's provisions in public record requests to the Service in the foreseeable future.

91.     The Center's organizational activities will be adversely affected if the Service is allowed to continue violating FOIA's requirement to provide all reasonably segregable and non-exempt portions of records that are responsive to the Center's FOIA requests, as it has done in this case.

92.     The Center has exhausted its administrative remedies with respect to this claim. *Id*. § 552(a)(6)(C)(i).

93.     The Center is entitled to declaratory and injunctive relief from the agency's continued, improper withholdings of the requested records. Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, upon information and belief the Service will continue to violate the Center's rights to receive public records under FOIA.

### FIFTH CLAIM FOR RELIEF:
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
### (In the Alternative to the First through Fourth Claims)

### (The Service's Actions Unlawfully Withheld or Unreasonably Delayed)

94.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

95.     The Service unlawfully withheld agency action and failed to comply with FOIA's mandates through its failure and refusal to: (1) issue a timely final determination on the following FOIA requests by the Center: FWS-2018-01237; FWS-2019-00121; and FWS-2019-00119; (2) promptly and completely provide all of the records responsive to the FOIA requests that are public and non-exempt, including reasonably segregable, non-exempt portions of records that may otherwise be subject to an exemption; and (3) conduct a search that is reasonably

calculated to locate all records responsive to the Center's FOIA requests. These failures by the Service constitute agency action that is unlawfully withheld and are, therefore, actionable pursuant to the APA. 5 U.S.C. § 706(1).

96.     Alternatively, the Service unreasonably delayed agency action and failed to comply with FOIA's mandates through its failure and refusal to: (1) issue a timely final determination on the following FOIA requests by the Center: FWS-2018-01237; FWS-2019-00121; and FWS-2019-00119; (2) promptly and completely provide all of the records responsive to the FOIA requests that are public and non-exempt, including reasonably segregable, non-exempt portions of records that may otherwise be subject to an exemption; and (3) conduct a search that is reasonably calculated to locate all records responsive to the Center's FOIA requests. These failures by the Service constitute agency action unreasonably delayed, and are, therefore, actionable under the APA. *Id*. § 706(1).

97.     As alleged above, the Service's failure to comply with the mandates of FOIA has injured the Center's interests in public oversight of governmental operations and is in violation of its statutory duties under the APA.

98.     The Center has suffered a legal wrong as a result of the Service's failure to comply with the mandates of FOIA.

99.     The Center has no other adequate remedy at law to redress the violations in this claim and is entitled to judicial review under the APA. *Id*. § 702.

100.    The Center is entitled to declaratory and injunctive relief from the agency's continued, improper withholdings of the requested records.

## SIXTH CLAIM FOR RELIEF:
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
### (In the Alternative to the First through Fifth Claims)

COMPLAINT                                                                                                    18

**(The Service's Arbitrary and Capricious Agency Action)**

101.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

102.     The Center has a statutory right to have the Service process its FOIA requests in a manner that is not arbitrary, capricious, an abuse of discretion, or is otherwise in accordance with the law. 5 U.S.C. § 706(2)(A).

103.     The Service has repeatedly violated FOIA's statutory mandates in responding to the Center's FOIA requests by failing to: (1) issue a timely final determination on the following FOIA requests by the Center: FWS-2018-01237; FWS-2019-00121; and FWS-2019-00119; (2) promptly and completely provide all of the records responsive to the FOIA requests that are public and non-exempt, including reasonably segregable, non-exempt portions of records that may otherwise be subject to an exemption; and (3) conduct a search that is reasonably calculated to locate all records responsive to the Center's FOIA requests. The Service's actions in repeatedly violating FOIA's statutory mandate in responding to the Center's FOIA requests are arbitrary, capricious, an abuse of discretion, or not in accordance with the law and are, therefore, actionable pursuant to the APA. *Id*. § 706(2)(A).

104.     As alleged above, the Service's failure to comply with the mandates of FOIA has injured the Center's interests in public oversight of governmental operations and is in violation of the agency's statutory duties under the APA.

105.     The Center has no other adequate remedy at law to redress the violations in this claim and is entitled to judicial review under the APA. *Id*. § 702.

106.     The Center is entitled to declaratory and injunctive relief from the agency's continued, improper withholdings of the requested records.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1.    Order the Service to conduct searches that are reasonably calculated to locate all records

       responsive to each of Plaintiff's three FOIA requests, with the cut-off date for such

       search being the date the search is conducted, and promptly provide Plaintiff with all

       responsive records and reasonably segregable portions of lawfully exempt records sought

       in this action;

2.    Declare that the Service's failure to timely make a determination on Plaintiff's three

       FOIA requests is unlawful under FOIA, 5 U.S.C. § 552(a)(6)(A)(i), or, in the alternative,

       is agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. §

       706(1), or is arbitrary, capricious, an abuse of discretion, or not in accordance with law, 5

       U.S.C. § 706(2);

3.    Declare that the Service's failure to disclose and promptly make available the requested

       records to Plaintiff is unlawful under FOIA, 5 U.S.C. § 552(a)(3)(A), or, in the

       alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5

       U.S.C. § 706(1), or is arbitrary, capricious, an abuse of discretion, or not in accordance

       with law, 5 U.S.C. § 706(2);

4.    Declare that the Service's failure to undertake a search that is reasonably calculated to

       locate all records that are responsive to Plaintiff's FOIA requests is unlawful under

       FOIA, 5 U.S.C. § 552(a)(3)(C)-(D), or, in the alternative, is agency action that has been

       unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), or is arbitrary,

       capricious, an abuse of discretion, or not in accordance with law, 5 U.S.C. § 706(2);

5.     Declare that the Service's failure to provide Plaintiff with reasonably segregable

COMPLAINT                                                                                          20

portions of records not subject to any FOIA exemption is unlawful under FOIA, 5 U.S.C.

§§ 552(a)(8)(A)(ii), (b), or, in the alternative, is agency action that has been unlawfully

withheld or unreasonably delayed, 5 U.S.C. § 706(1), or is arbitrary, capricious, an abuse

of discretion, or not in accordance with law, 5 U.S.C. § 706(2);

6.      Exercise close supervision over the Service as it processes Plaintiff's requests;

7.      Award Plaintiff its reasonable attorneys' fees and costs pursuant to 5 U.S.C. §

552(a)(4)(E); and

8.      Grant any such further relief as the Court may deem just and proper.

Dated this 3rd day of April, 2019.

Respectfully submitted,

/s/ *Hannah M.M. Connor*
Hannah M.M. Connor (D.C. Bar No. 1014143)
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
(202) 681-1676
hconnor@biologicaldiversity.org

/s/ *Margaret E. Townsend*
Margaret E. Townsend (D.C. Bar No. OR0008)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6409
mtownsend@biologicaldiversity.org

*Attorneys for Plaintiff Center for Biological Diversity*